*680 OPINION OF THE COURT
Harold Tompkins, J.
This case raises the issue of whether a party can be compensated under a health insurance policy for the expenses related to a sperm bank procedure recommended prior to chemotherapy treatment and for compatibility tests on a sibling as a candidate for a bone marrow transplant on the claimant.
The claimant, a New York City school teacher covered by a group health insurance plan issued by defendant, suffers from multiple myeloma, a progressive and ultimately fatal form of bone cancer.* This small claims action was commenced following defendant’s rejection of the claims submitted by claimant to the insurer for reimbursement of his expenses relating to the donor bone marrow tests performed on his sister as a potential transplant donor, the sperm banking procedures undertaken by claimant as a defense against infertility arising out of his cancer treatment and certain coinsurance claims disputed by the defendant.
Defendant Group Health, Incorporated (GHI) is a nonprofit corporation organized pursuant to section 4301 of the Insurance Law which offers a comprehensive benefit plan for New York City employees and retirees known as GHI-CBP. The plan’s certificate, effective July 1, 1983, indicates that the insurance evidenced by the policy meets the minimum standards for basic medical insurance as defined by the New York State Insurance Department (11 NYCRR part 52). Defendant opposes the pleaded claims as excluded or otherwise barred by the insurance policy.
The first claim for which bills paid by claimant were submitted but not reimbursed by GHI involves blood tests performed on the claimant’s sister at the direction of the claimant’s treating physician to determine her suitability as a potential bone marrow donor. Defendant opposes the claim for reimbursement on the ground that the claimant’s sister is not a covered dependent under the certificate of insurance and thus the medical testing performed on her, even if for the *681 claimant’s benefit or as part of his over-all treatment, is excluded from coverage.
It is undisputed that the claimant’s sister is not a covered person under the GHI-CBP insurance contract. The court, however, rejects defendant’s illogical and tenuous position that this factor standing alone compels dismissal of the claim. The relevant inquiry instead is whether the donor bone marrow tests performed on Rita Zwerin are among the "Covered Medical Services” for the insured Jeffrey Zwerin set forth in the plan. The section entitled "General Medical Care” indicates that payments under the plan are made for the "treatment of illness” as a covered medical service.
This broad provision for coverage of the insured’s "treatment of illness” is restricted by an enumerated list of limitations and exclusions and certain criteria for coverage. These limitations exclude coverage unless the services meet generally accepted standards of medical practice, the services must not be in excess of the normally required treatment and the services must be medically necessary.
In order to recover the claimant has the burden of proving that the tests performed on his sister were part of the "treatment of [his] illness” covered by the policy. Conversely, the burden of proving that the claim falls within the exclusions of the policy rests with the insurer (Neuwirth v Blue Cross & Blue Shield, 62 NY2d 718 [1984]).
At the trial the claimant submitted a letter on the stationery of his treating physician, Dr. William H. Sherman, indicating that the blood tests performed on Rita Zwerin were at direction as a necessary step in exploring the possibility of a bone marrow transplant operation as part of the claimant’s treatment. Dr. Sherman’s letter established that the tests were conducted for Mr. Zwerin’s benefit and as part of the treatment of his illness within the meaning of that provision for coverage under the insurance contract.
In this court’s opinion, Jeffrey Zwerin, faced with a debilitating disease, is permitted to explore all reasonable avenues of treatment which might arrest and reverse the progress of that disease.
It is well settled that ambiguities in a contract of insurance are construed against the insurer (Austrian v Equitable Life Assur. Socy., 39 NY2d 477 [1976]). In this case, since the claim is not excluded and claimant has shown a reasonable attempt at treatment of his condition, claimant is enti *682 tied to recover on his claim for the expenses of medical tests rendered to Rita Zwerin for the claimant’s benefit (see, Little v Blue Cross, 72 AD2d 200 [4th Dept 1980]).
However, the claim for recovery of the expenses relating to the sperm banking procedures undertaken by claimant as a defense of his cancer treatment was properly rejected by defendant under the clear terms of the policy.
This procedure is not part of the actual treatment of claimant’s illness or any of the other stated coverages of the policy. Additionally, the policy contains a specific exclusion for medical care "in excess of the care normally required for treatment of a condition”. (Emphasis added.)
The court, in this instance, must adhere to the principle that unambiguous provisions in the contract must be given their plain and ordinary meaning. To adopt the claimant’s position that the sperm bank procedures will enable him to have children in the future following chemotherapy is an addition to the contract and cannot be imposed by this court. Under New York law, the second claim must be therefore dismissed.
Finally, the claim for reimbursement of certain coinsurance claims submitted by claimant is dismissed. The credible evidence and documentation offered at the trial indicates that the claims were in fact paid by defendant.
Accordingly, the court finds in favor of claimant on the first of his three claims; the remaining claims are dismissed. Judgment is directed to be entered in favor of claimant in the amount of $312, together with costs and interest from July 1, 1987.

 (Merck Manual of Diagnosis and Therapy 1154 [14th ed 1982].) The Attorneys’ Dictionary of Medicine (1988 ed) defines multiple myeloma as: "A malignant (i.e., cancerous) tumor originating from the cells which make up the bone marrow. It is marked by anemia, pain, rarefaction (thinning) of the affected bones, and pathologic fractures (i.e., fractures caused by ordinary or minimal strains). The chief characteristic is the occurrence of multiple areas of bone destruction.”